# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROCKY PURDIN,                                    Case No. 1:14-cv-626
      Petitioner,

                                          Beckwith, J.
      vs                                    Bowman, M.J.

WARDEN, ROSS                                    **REPORT AND**
CORRECTIONAL INSTITUTION,                        **RECOMMENDATION**
      Respondent.

Petitioner, an inmate in state custody at the Ross Correctional Institution in Chillicothe, Ohio, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of counsel from the Ohio Public Defender's Office. (*See* Doc. 1). In the petition, petitioner challenges his April 2011 conviction for murder with firearm specification following a jury trial before the Adams County, Ohio, Court of Common Pleas. (*Id.*). Respondent responded to the petition by filing a portion of the state court record and a return of writ. (Docs. 7-8). Petitioner filed a "traverse" brief in reply to the return to the writ. (Doc. 11). Most recently, in accordance with an Order issued August 19, 2015 (*see* Doc. 12), respondent supplemented the record with the trial transcript. (Doc. 13). It now appears that this matter is ripe for final disposition.

## I. PROCEDURAL BACKGROUND

### State Trial Proceeding

In December 2010, the Adams County grand jury returned an indictment charging petitioner with two counts of murder in violation of Ohio Rev. Code § 2903.02 and one count of

voluntary manslaughter in violation of Ohio Rev. Code § 2903.03(A). (Doc. 7, Ex. 1). In February 2011, the grand jury returned a superseding indictment adding a firearm specification to the murder charges and changing the voluntary manslaughter count to reckless homicide in violation of Ohio Rev. Code § 2903.041(A). (*Id.*, Ex. 2). The incident giving rise to the charges occurred when a fight erupted in petitioner's home, which resulted in the death of petitioner's step-son, William Stunich. The murder counts alternatively charged petitioner with purposely causing the death of Stunich (Count I) and with causing the death of Stunich "as a proximate result of committing or attempting to commit Felonious Assault, a felony of the second degree" (Count II). (*Id.*). The facts were summarized as follows by the Ohio Court of Appeals, Fourth Appellate District, based on evidence presented at petitioner's trial:[1]

> In the early morning hours of December 6, 2010, police arrived at Purdin's home in response to a 911-call made by Purdin's wife, Kathleen. Inside Purdin's home, police found Purdin's stepson, William Stunich, on the floor of the hallway. (Stunich was Kathleen's son.) Purdin had shot Stunich with a rifle, and Stunich passed away shortly after the police arrived. . . .
>
> Purdin claimed that he shot Stunich in self-defense after Stunich assaulted him. According to Purdin's testimony at trial and his statements to police shortly after the incident, the following events led to Stunich's death. On the date of the incident, Stunich was temporarily residing at Purdin's home. Apparently, there was tension between Purdin and Stunich because Purdin believed that Stunich was engaged in criminal activity. During the evening of December 5, 2010, Purdin was watching a football game in his living room. Stunich awoke and went to the kitchen after having slept most of the day. Stunich became angered by comments Purdin had written on some food containers. After reading Purdin's comments, Stunich assaulted Purdin in the living room. The struggle then moved from the living room to the hallway, near the bathroom of the home. Stunich knocked Purdin down in the bathroom, but, after that, Purdin was not sure where Stunich went. At that point, Purdin retrieved his rifle. He and Stunich then

---

[1] The Ohio appellate court summarized the facts in its direct appeal decision filed January 4, 2013. (*See* Doc. 7, Ex. 24). 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless the petitioner rebuts the presumption by "clear and convincing evidence." In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted below, the appellate court's findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

confronted each other in the hallway.  Purdin testified that he told Stunich to "stop," but Stunich "came at [Purdin,]" so Purdin shot Stunich. . . .  Additionally, Purdin claimed that, after he shot Stunich the first time, "[Stunich] kept coming[.]". . .  Ultimately, Purdin shot Stunich three times.  At some point after he was shot, Stunich called out to Kathleen, who had been asleep.  Kathleen called 911, and Purdin surrendered to the police when they arrived.

(*Id.*, Ex. 24, pp. 2-3, at PAGEID#: 281-82).

The matter proceeded to trial before a jury, which found petitioner guilty on the felony-murder charge contained in Count II with firearm specification and the reckless-homicide charge set forth in Count III.  (*See id.*, Ex. 5).  However, the jury was unable to reach a verdict on the murder charge contained in Count I, and a mistrial was declared with respect to that count.  (*See id.*, Exs. 5-6).  On March 18, 2011, following a sentencing hearing, the trial court issued a "Judgment Entry On Sentence" merging petitioner's reckless-homicide and felony-murder convictions for sentencing purposes and sentencing petitioner to an "indefinite prison term on Count II of Fifteen (15) years to life" and a consecutive "mandatory three (3) year term of incarceration on the Gun Specification" attached to Count II.  (*Id.*, Ex. 11).  Thereafter, on April 4, 2011, the trial court issued an "Amended Judgment Entry On Sentence" pertaining to "restitution as and for reimbursement paid for the funeral expenses of the victim."  (*Id.*, Ex. 12).  On March 1, 2012, the trial court granted the State's motion filed February 27, 2012 to dismiss Count I.  (*See id.*, Exs. 18-19).[2]

### State Appeal Proceedings

Following the dismissal of Count I in March 2012, petitioner pursued a timely appeal to the Ohio Court of Appeals, Fourth Appellate District, with the assistance of new counsel from the Ohio Public Defender's Office.  (Doc. 7, Ex. 20).  In the brief filed by counsel on petitioner's

---

[2] The State filed the motion to dismiss Count I after petitioner's initial appeal to the Ohio Court of Appeals, Fourth Appellate District, was dismissed on February 23, 2012 for lack of jurisdiction because Count I was still pending in the trial court.  (*See* Doc. 7, Exs. 13-14, 17).

behalf, petitioner presented four assignments of error, including the following claim alleged as the fourth assignment of error:

> Defense counsel erred in submitting to the court proposed jury instructions on the law of self-defense in a case in which the defendant was assaulted in his own home, and thereby deprived Mr. Purdin of his right to a fair trial before a properly instructed jury, and of his right to the effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

(*Id.*, Ex. 21).

On January 4, 2013, the Ohio Court of Appeals issued a Decision and Judgment Entry overruling the assignments of error and affirming the trial court's judgment.  (*Id.*, Ex. 24).

Petitioner's appellate counsel next pursued an appeal to the Ohio Supreme Court based on two claims of error that had been presented to the Ohio Court of Appeals.  (*See id.*, Exs. 25-26).  Specifically, in the memorandum in support of jurisdiction, counsel asserted as the second proposition of law that "[t]rial counsel renders ineffective assistance of counsel when he or she fails to request jury instructions that would have given the jurors proper guidance with respect to self-defense cases in which the defendant is assaulted in his own home."  (*Id.*, Ex. 26).  Respondent states in the return of writ that the Ohio Supreme Court declined to accept jurisdiction of the appeal and dismissed the matter on May 8, 2013.  (Doc. 8, at PAGEID#: 367).

### Federal Habeas Corpus Petition

The same attorney who represented petitioner on appeal in the state courts filed the instant habeas corpus petition on August 6, 2014.  (*See* Doc. 1).  In the petition, petitioner alleges the following claim as the sole ground for relief:

> **Ground One:**  Trial counsel's performance was deficient, and violated Mr. Purdin's 6th Amendment right to effective assistance of counsel.

4

**Supporting Facts:** Trial counsel rendered ineffective assistance of counsel when he failed to request jury instructions that would have given the jurors proper guidance with respect to a self-defense case in which Mr. Purdin was assaulted in his own home. The trial court's instructions explicitly and improperly caused the jury to consider an aspect of self-defense—escape or retreat—that was prejudicial and irrelevant because Mr. Purdin's actions occurred in his own home. And the improper instruction allowed the State to argue that "[h]e did not have to use the gun. It was not his only means of escape," which resulted in a reasonable probability that the jury convicted Mr. Purdin of murder based on a deeply flawed understanding of the law of self-defense in Ohio.

(*Id.*, at PAGEID#: 5).

In the return of writ filed in response to the petition, respondent addresses petitioner's claim on the merits. (*See* Doc. 8). Petitioner has filed a "traverse" brief in reply to the return of writ. (Doc. 11).

## II. PETITIONER HAS NOT DEMONSTRATED HE IS ENTITLED TO RELIEF ON HIS CLAIM THAT HIS TRIAL COUNSEL WAS INEFFECTIVE FOR PROPOSING THE TRIAL COURT'S JURY INSTRUCTIONS ON SELF-DEFENSE

Both parties agree that the deferential standard of review set forth in 28 U.S.C. § 2254(d) applies to petitioner's sole ground for relief. (*See* Doc. 8, pp. 8-9, at PAGEID#: 368-69; Doc. 11, p. 4, at PAGEID#: 388). Under § 2254(d), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet.  *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards.  *See, e.g., Cullen v. Pinholster,* [563] U.S. [170], 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court).  It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . .  This is a "substantially higher threshold.". . .  To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* [562] U.S. [86, 98-99], 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).  The Supreme Court has further held that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d).  *See Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings" and "preserves

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 562 U.S. at 102. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412); *see also White v. Woodall*, __ U.S. __, 134 S.Ct. 1697, 1702 (2014) (quoting *Howes v. Fields*, __ U.S. __, 132 S.Ct. 1181, 1187 (2012) (internal citation and quotation marks omitted)) ("[C]learly established Federal law' for purposes of § 2254(d)(1) includes 'only the holdings, as opposed to the dicta, of this Court's decisions."). Decisions by lower courts are relevant only "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

7

Petitioner challenges the following jury instructions regarding self-defense that were given by the trial court in accordance with proposed instructions submitted by petitioner's trial counsel:

> The defendant claims to have acted in self-defense.  To establish the claim of self-defense, Rocky Purdin must prove by the greater weight of the evidence that:
>
> He was not at fault in creating the situation giving rise to the death of William Stunich; and
>
> He had reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent danger of death or great bodily harm, and that his only reasonable means of escape from such danger was by use of deadly force; and he had not violated any duty to retreat to avoid danger.
>
> Now, a person who lawfully is in his residence has no duty to retreat before using force in self-defense against a cohabitant with an equal right to be in the home, even if he could have done so with complete safety.  A cohabitant is entitled to use such means as are necessary to repel an assailant, even to the use of deadly force, provided he was not at fault in creating the situation, and provided he had reasonable grounds to believe and an honest belief, even if mistaken, that the use of deadly force was necessary to repel his assailant.

(Doc. 13, Trial Tr. 956-57, at PAGEID#: 1357-58; *see also* Doc. 7, Ex. 3, at PAGEID#: 47-48; Ex. 4, at PAGEID#: 62-63).

On direct appeal from his conviction and sentence, petitioner contended that the instruction "explicitly and improperly caused the jury to consider an aspect of self-defense—escape or retreat—that was prejudicial and irrelevant, because Mr. Purdin's actions occurred in his own home."  (Doc. 7, Ex. 14, at PAGEID#: 137).   Petitioner argued that the following Ohio pattern jury instruction, which "properly eliminates from the jury's consideration any issue regarding whether the defendant had other 'reasonable grounds for escape,'" was the "correct" instruction that should have instead been requested by his counsel:

> If the defendant was assaulted in his own home, or if the home was attacked, the defendant had no duty to retreat or escape and could use such means as were necessary to repel the assailant from the home, or to prevent any forcible entry to

8

to the home, even deadly force, provided that he had reasonable grounds to
believe and an honest belief that the use of deadly force was necessary to repel the
assailant or to prevent forcible entry.

(*Id.*, at PAGEID#: 139).

The Ohio Court of Appeals was the only state court to issue a reasoned decision

addressing the merits of petitioner's claim.  The court overruled the assignment of error,

reasoning in pertinent part as follows:

A criminal defendant has a constitutional right, which includes the right to the
effective assistance from counsel.  *McMann v. Richardson*, 397 U.S. 759, 771, 90
S.Ct. 1441, 25 L.Ed.2d 763 (1970).  To secure reversal for the ineffective
assistance of counsel, one must show two things:  (1) "that counsel's performance
was deficient * * *[,]" which "requires showing that counsel made errors so
serious that counsel was not functioning as the 'counsel' guaranteed the defendant
by the Sixth Amendment[;]" and (2) "that the deficient performance prejudiced
the defense * * *[,]" which "requires showing that counsel's errors were so
serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984). . . .  "Failure to satisfy either prong is fatal as the accused's burden
requires proof of both elements." . . .  "Deficient performance means performance
falling below an objective standard of reasonable representation." . . .  "To show
that a defendant has been prejudiced by counsel's deficient performance, the
defendant must prove that there exists a reasonable probability that, were it not for
counsel's errors, the result of the trial could have been different." . . .

Initially, we will consider whether Purdin's trial counsel's performance was
deficient by reviewing the trial court's self-defense jury instructions.  "When we
review a trial court's jury instructions, we must consider the jury instructions as a
whole, rather than viewing an instruction in isolation, and then determine whether
the jury charge probably misled the jury in a matter materially affecting the
complaining party's substantial rights." *State v. Ward*, 168 Ohio App.3d 701,
2006-Ohio-4847, 861 N.E.2d 823, ¶ 29 (4th Dist.).  Generally, reversal is not
warranted "due to error in the jury instructions unless the error is so prejudicial
that it may induce an erroneous verdict."  *Id.*

\*\*\*\*

Purdin argues that the use of the word "escape" in the trial court's instructions
misled the jury because it improperly implied Purdin had a duty to retreat when,
in fact, he had no such duty.  We disagree.

Initially, we note that the jury instructions were an accurate statement of the law.

9

The instructions stated that, if Purdin was in his home, he had no duty to retreat provided (1) that he was not at fault in creating the violent situation and (2) that he had reasonable grounds to believe and an honest belief, even if mistaken, that the use of deadly force was necessary to repel his assailant.  *See State v. Powell*, 176 Ohio App.3d 28, 2008-Ohio-1316, 889 N.E.2d 1047, ¶ 16-22 (2d Dist.) (holding that similar instructions were an accurate statement of the law).  When viewing the instructions as a whole, we cannot conclude that the use of the word "escape" in the second element of the self-defense instruction would have erroneously caused the jury to impose a duty to retreat on Purdin.

Furthermore, the instructions in this case are distinguishable from cases where the jury may have been misled into thinking that a defendant had a duty to retreat.  In those cases, the error occurred because the trial court's instructions omitted any reference to the duty to retreat and the effect of finding that the defendant was in his or her home when the incident occurred.  *See, e.g., Ward*, 168 Ohio App.3d 701, 2006-Ohio-4847, 861 N.E.2d 823, (4th Dist.) ¶¶ 11, 32; *State v. Huff*, 5th Dist. No. 2006CA81, 2007-Ohio-3360, ¶¶ 23, 39-43; *State v. Parks*, 10th Dist. 11AP-98, 2011-Ohio-4056, ¶ 17; *State v. Maine*, 4th Dist. No. 04CA46, 2005-Ohio-3742, ¶ 12-17.  Here, by contrast, the instructions clearly provided the circumstances under which Purdin would not have had a duty to retreat.

Thus, Purdin's trial counsel did not submit erroneous self-defense instructions to the trial court.  As a result, Purdin cannot show that his trial counsel's performance was deficient, and Purdin cannot prevail on his ineffective assistance of counsel claim.

(*Id.*, Ex. 24, at PAGEID#: 289-93) (some case citations omitted).

As a threshold matter, the Ohio Court of Appeals' adjudication of petitioner's ineffective assistance of counsel claim is not contrary to clearly established federal law as determined by the Supreme Court.  The state appellate court correctly identified and applied the two-prong standard of review enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), when addressing the merits of petitioner's claim. Therefore, in order to obtain relief in this case, petitioner must demonstrate that the Ohio Court of Appeals' disposition of the issue involved an unreasonable application of *Strickland*.

As the state appellate court recognized, to establish a *Strickland* violation, petitioner must demonstrate both (1) his trial attorney's conduct was constitutionally deficient; and (2) counsel's

deficient performance prejudiced the defense.  *See Strickland*, 466 U.S. at 687.  Under the first

prong of the *Strickland* test, it must be shown that counsel's representation fell below an

objective standard of reasonableness based on all the circumstances surrounding the case.  *Id.* at

688.  In determining whether or not counsel's performance was deficient, the Court must indulge

a strong presumption that the challenged conduct fell within the wide range of reasonable

professional assistance.  *Id.* at 689.  Under the second "prejudice" prong of the *Strickland* test,

petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's

errors, the outcome of the trial would have been different.  *See id.* at 694.  Petitioner has met his

burden if he shows that the result of the trial would "reasonably likely have been different absent

the errors."  *Id.* at 695.  The Court need not examine the question of whether counsel's

performance was deficient before addressing the question of whether petitioner was prejudiced

by the challenged conduct.  The Court may dispose of an ineffective assistance of counsel claim

by finding that petitioner has made an insufficient showing on either ground.  *Id.* at 697.

      As respondent has argued (*see* Doc. 8, at PAGEID#: 370-71), this Court must employ a

"doubly deferential" standard of review in evaluating the reasonableness of the Ohio Court of

Appeals' adjudication of petitioner's claim under *Strickland.  See Woods v. Daniel,* __ U.S. __,

135 S.Ct. 1372, 1376 (2015); *Burt v. Titlow*, __ U.S. __, 134 S.Ct. 10, 13 (2013); *Premo v. Moore*,

562 U.S. 115, 122-23 (2011) (quoting *Harrington*, 562 U.S. at 104-05); *Knowles v. Mirzayance*,

556 U.S. 111, 123 (2009).  Although "[s]urmounting *Strickland*'s high bar is never an easy task,"

*Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)), the

AEDPA requires that a second layer of deference be accorded the state courts' adjudication of

ineffective assistance of counsel claims.  The Supreme Court has explained:

      Even under *de novo* review, the [*Strickland*] standard for judging counsel's
      representation is a most deferential one. . . .

****

> Establishing that a state court's application of *Strickland* was unreasonable under
> § 2254(d) is all the more difficult.  The standards created by *Strickland* and §
> 2254(d) are both "highly deferential," . . . and when the two apply in tandem,
> review is "doubly" so. . . .   The *Strickland* standard is a general one, so the range
> of reasonable applications is substantial. . . .   Federal habeas courts must guard
> against the danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not
> whether counsel's actions were reasonable.  The question is whether there is any
> reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 689, and *Knowles*, 556 U.S. at

123); *see also Premo*, 562 U.S. at 122-23.  Therefore, on federal habeas review, "[t]he pivotal

question is whether the state court's application of the *Strickland* standard was unreasonable,"

which "is different from asking whether defense counsel's performance fell below *Strickland*'s

standard." *Harrington*, 562 U.S. at 101.

In this case, petitioner contends that the Ohio Court of Appeals unreasonably determined

that his trial counsel's performance was not "deficient" under the first prong of the *Strickland*

test. (*See* Doc. 11, at PAGEID#: 390).  As the Ohio court recognized, the inquiry turns on the

propriety of the jury instructions pertaining to the defense of self-defense that were given at the

request of petitioner's trial attorney.  "In Ohio, the affirmative defense of self-defense has three

elements:  (1) the defendant was not at fault in creating the violent situation, (2) the defendant

had a bona fide belief that []he was in imminent danger of death or great bodily harm and that

h[is] only means of escape was the use of force, and (3) . . . the defendant did not violate any

duty to retreat or avoid the danger." *State v. Thomas*, 673 N.E.2d 1339, 1342 (Ohio 1997) (and

Ohio Supreme Court cases cited therein).  In *Thomas*, the Ohio Supreme Court stated that the

third element of the defense "derives from the common-law rule that the right to kill in self-

defense may be exercised only if the person assaulted attempted to 'retreat to the wall' whenever

12

possible." *Id.* The *Thomas* court held, however, that "there is no duty to retreat when one is assaulted in one's own home" and that the exception applies to incidents, such as this, that occur in residences where both the defendant and victim are cohabitants. *See id.* at 1342-43. The court explained that the rationale for the exception "is that a person in h[is] own home has already retreated 'to the wall,' as there is no place to which []he can further flee in safety." *Id.* at 1343.

Here, as the Ohio Court of Appeals pointed out, the jury was properly instructed in accordance with *Thomas* that petitioner had no duty to retreat. (*See* Doc. 7, Ex. 4, at PAGEID#: 62-63; Doc. 13, Trial Tr. 956-57, at PAGEID#: 1357-58). It is petitioner's position that the instruction regarding the second element of the self-defense defense could have nevertheless misled the jury to believe that petitioner had a duty to retreat if he had a means of "escape" other than the use of deadly force. (*See* Doc. 11, at PAGEID#: 390-91). The undersigned acknowledges that, at least at first blush, the reference to "escape" in the instruction on the second element of the defense could be confusing to a juror, particularly in the absence of any instruction about the exception to the duty to retreat when the defendant is assaulted in his own home. However, in this case where the jury was properly instructed about the third element of the defense, it was reasonable for the Ohio Court of Appeals to refuse to conclude that the jury would have been confused and misled to believe that petitioner had  a *duty to retreat* by the instructions pertaining to the separate issue of the *defendant's belief* that he "was in imminent danger of death or great bodily harm, and that his only reasonable means of escape from such danger was by use of deadly force." (*See* Doc. 13, Trial Tr. 956, at PAGEID#: 1357). In contrast to the duty-to-retreat element, the second element involves a distinctly different inquiry about the defendant's state of mind. As the Ohio Supreme Court has explained, the second element is a "combined objective and subjective test," which "'is placed on the grounds of the

*bona fides* of defendant's belief, and reasonableness therefor, and whether under the circumstances, he exercised a careful and proper use of his own faculties.'" *Thomas*, 673 N.E.2d at 1345-46 (quoting *State v. Sheets*, 152 N.E. 664, 664 (Ohio 1926)); *see also State v. Goff*, 942 N.E.2d 1075, 1082 (Ohio 2010) (quoting *State v. Koss*, 551 N.E.2d 970, 973 (Ohio 1990)) (noting that because "Ohio has a subjective test for self-defense, the defendant's state of mind is crucial to this defense").  Therefore, contrary to petitioner's contention (*see* Doc. 11, at PAGEID#: 389), the jurors were *not* instructed to weigh whether petitioner's "only reasonable grounds of escape from . . . danger was by the use of deadly force," but rather were properly instructed as required under Ohio law to weigh the reasonableness and honesty of petitioner's belief regarding the need for such force under the circumstances presented.

        In analogous cases where the offense (usually committed by a battered spouse or partner) occurred in a residence in which both the victim and defendant were cohabitants, the Ohio courts have not suggested that there is any impropriety in instructing the jury that the second element includes the defendant's reasonable and honest belief that the "only means of escape was the use of force" even though the instructions must include with respect to the third element that "there is no duty to retreat when one is assaulted in one's own home."  *See, e.g.*, *Thomas*, 673 N.E.2d at 1342-43; *State v. D'Agostino*, No. 12CA010304, 2014 WL 605527, at *6-7 (Ohio Ct. App. Feb. 18, 2014); *State v. Geter-Gray*, No. 25374, 2011 WL 1379065, at *3-4 (Ohio Ct. App. Apr. 13, 2011); *see also State v. Powell*, 889 N.E.2d 1047, 1051-52 (Ohio Ct. App. 2008) (holding in a case where the offense occurred inside the defendant's home that the court's instructions on self-defense, which included the instruction that the defendant must prove "she had reasonable grounds to . . . believe and an honest belief that she was in immediate danger of death or of great bodily harm *and that her only means of escape from such danger was by the use of deadly*

14

force," was "a complete and accurate statement of the law") (emphasis added).  *Cf. Goff*, 942 N.E.2d at 1082 (quoting *Koss*, 551 N.E.2d at 971) (in addressing an evidentiary issue involving the "battered-woman syndrome," the Ohio Supreme Court pointed out the syndrome relates to the second element of the defense "'to assist the trier of fact to determine whether the defendant acted out of honest belief that she [was] in imminent danger of death or great bodily harm *and the use of such force was her only means of escape*'") (emphasis added); *State v. Ray*, 997 N.E.2d 205, 211-14 (Ohio Ct. App. 2013) (although the Ohio Court of Appeals concluded that the trial court erred in denying the defendant's "no duty to retreat" jury instruction, it did not find any impropriety in the instruction on the second element—*i.e.*., that "the defendant must prove by the greater weight of the evidence that . . . he had . . . reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent danger of death or great bodily harm, *and that his only reasonable means of escape from such danger was by the use of deadly force*") (emphasis added).

Petitioner contends a less confusing instruction, which eliminated any reference to "escape" in describing the second element of the self-defense defense, should have been requested by his counsel.  However, the *Strickland* inquiry does not turn on which of two alternative instructions would have been the better choice, but rather whether counsel's choice fell outside the wide range of reasonable assistance.  Here, petitioner's trial counsel proposed jury instructions essentially parroting language used by the Ohio Supreme Court in describing the three elements of the self-defense defense, which had also been applied without any mention of impropriety in analogous cases involving no duty to retreat.  Therefore, even assuming as petitioner has argued that an instruction omitting any reference to "escape" could have reduced the risk of jury confusion on the issue of the duty to retreat, it was not unreasonable for the Ohio

Court of Appeals to conclude that counsel's performance fell within the wide range of reasonable professional assistance under the first prong of the *Strickland* test.

      Petitioner has argued that petitioner's counsel was ineffective for failing to request the alternative instruction under the circumstances of this case because the prosecutor admitted in a side-bar conference that he "interchangeably" used the terms "escape" and "retreat" and was permitted to improperly argue to the jury that petitioner "did not have to use the gun" as "[i]t was not his only means of escape." (*See* Doc. 11, at PAGEID#: 389; *see also* Doc. 13, Trial Tr. 927, 931, at PAGEID#: 1328, 1332). The undersigned is not persuaded by that argument. The record reflects that rather than providing ineffective assistance, petitioner's counsel effectively advocated for petitioner when the prosecutor made the challenged statement in closing argument by interrupting the prosecutor mid-sentence and immediately lodging an objection on the ground that "it's improper for [the prosecutor] talk about an avenue of escape" when there is no duty to retreat in one's own home. (*See* Doc. 13, Trial Tr. 927-28, at PAGEID#: 1328-29). A lengthy side-bar conference ensued, where the prosecutor made the reference to his interchangeable use of the terms "escape" and "retreat," but also indicated that he would satisfy the court's concern that the jury be informed of the fact that petitioner had no duty to retreat in his home "even if he could have done so" and that the prosecutor's prior statement was "not a valid argument." (*See id.*, Trial Tr. 927-36, at PAGEID#: 1328-37). Immediately following the side-bar conference, which concluded with the court's reserving ruling on counsel's objection, the prosecutor cleared up any possibility of confusion or misunderstanding by stating to the jury:

> Now, a moment ago, I was talking to you about the second element. . ., but there's a third element that would negate, or make my argument invalid, with respect to any duty to escape or retreat. . ., and you'll get a jury instruction, that says. . ., that. . ., an inhabitant of a house, the owner of a house. . ., the defendant, Rocky Purdin would not have violated any. . ., does not have. . ., he has not violated any duty to retreat to avoid danger. A person who lawfully is in a residence has no

> duty to retreat before using force in self-defense against a co-habitant, with an
> equal right to be in the home, even if he could have done so with complete safety.

(*Id.*, Trial Tr. 936-37, at PAGEID#: 1337-38).  Furthermore, petitioner's counsel made it clear a number of times in his own closing argument that because the assault occurred in petitioner's residence, petitioner had no duty to retreat even if he could have done so "with complete safety." (*See id.*, Trial Tr. 896, 905, 913, at PAGEID#: 1297, 1306, 1314).  Therefore, the record does not support the argument that petitioner's trial counsel failed to ensure that the jury was not confused or misled by the requested jury instructions on self-defense that were given in this case.

Accordingly, in sum, upon thorough review of the trial record, and under the double-layer deferential standard of review that must be applied by this Court, the undersigned concludes that the Ohio Court of Appeals' determination that petitioner's counsel was not ineffective is neither contrary to nor an unreasonable application of *Strickland*.  Petitioner has not shown that the state court's overruling of his claim of constitutional error by counsel "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *See Harrington*, 562 U.S. at 103.   Therefore, petitioner has not demonstrated that he is entitled to habeas corpus relief based on his sole ground for relief.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2.  A certificate of appealability should issue with respect to the sole ground for relief alleged in the petition to the extent that petitioner has stated a "viable claim of the denial of a constitutional right" or the issues presented herein are "adequate to deserve encouragement to proceed further."  *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and, therefore, should **GRANT** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


                                        s/Stephanie K. Bowman
                                        Stephanie K. Bowman
                                        United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**


ROCKY PURDIN,                                     Case No. 1:14-cv-626
      Petitioner

                                          Beckwith, J.
      vs                                  Bowman, M.J.

WARDEN, ROSS
CORRECTIONAL INSTITUTION,
      Respondent

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

19