UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Rocky Purdin,                              :     Case No. 1:14-cv-626
                                           :
        Petitioner,                        :
                                           :
vs.                                        :
                                           :
Warden, Ross Correctional Institution,     :
                                           :
        Respondent.                        :

**ORDER**

Before the Court in this habeas corpus proceeding are Petitioner's objections to

the Magistrate Judge's Report and Recommendation.  (Doc. 16)   The Magistrate Judge

recommends that the petition be dismissed, and that the Court grant a certificate of

appealability on the sole issue raised in the petition.  (Doc. 14)

For the following reasons, the Court overrules Petitioner's objections, and adopts

the Report and Recommendation.

**Factual and Procedural Background**

The Magistrate Judge accurately set forth the background of the case, and

quoted the facts recited by the Ohio court of appeals in its opinion rejecting Purdin's

direct appeal:

> In the early morning hours of December 6, 2010, police arrived at Purdin's
> home in response to a 911-call made by Purdin's wife, Kathleen. Inside
> Purdin's home, police found Purdin's stepson, William Stunich, on the floor
> of the hallway. (Stunich was Kathleen's son.) Purdin had shot Stunich with
> a rifle, and Stunich passed away shortly after the police arrived. . . .
>
> Purdin claimed that he shot Stunich in self-defense after Stunich assaulted
> him. According to Purdin's testimony at trial and his statements to police
> shortly after the incident, the following events led to Stunich's death. On
> the date of the incident, Stunich was temporarily residing at Purdin's

home. Apparently, there was tension between Purdin and Stunich
because Purdin believed that Stunich was engaged in criminal activity.
During the evening of December 5, 2010, Purdin was watching a football
game in his living room. Stunich awoke and went to the kitchen after
having slept most of the day. Stunich became angered by comments
Purdin had written on some food containers. After reading Purdin's
comments, Stunich assaulted Purdin in the living room. The struggle then
moved from the living room to the hallway, near the bathroom of the
home. Stunich knocked Purdin down in the bathroom, but, after that,
Purdin was not sure where Stunich went. At that point, Purdin retrieved his
rifle. He and Stunich then confronted each other in the hallway. Purdin
testified that he told Stunich to "stop," but Stunich "came at [Purdin,]" so
Purdin shot Stunich. . . . Additionally, Purdin claimed that, after he shot
Stunich the first time, "[Stunich] kept coming[.]". . . Ultimately, Purdin shot
Stunich three times. At some point after he was shot, Stunich called out to
Kathleen, who had been asleep. Kathleen called 911, and Purdin
surrendered to the police when they arrived.

(Doc. 14 at 3, quoting from Doc. 7, Ex. 24, pp. 2-3, at PAGEID 281-82).

A jury convicted Purdin of felony murder with a firearm specification, and reckless
homicide. They did not reach a verdict on the murder count, and the state later
dismissed that charge. Purdin was sentenced to a term of 15 years to life. With new
appellate counsel, he appealed his conviction and sentence, raising four claims of error.
One claim alleged ineffective assistance of trial counsel with regard to the jury
instructions on self defense that were given by the trial court. The Ohio court of appeals
overruled all of his claims and affirmed his conviction. The Ohio Supreme Court denied
jurisdiction to review his appeal.

Purdin timely filed his habeas petition in this case on August 6, 2014. (Doc. 1)
He raises one ground for relief, ineffective assistance of trial counsel in failing to request
proper jury instructions on self defense. (Id. at PAGEID 5) Specifically, Purdin claims
that the instructions caused the jury to consider the issues of escape or retreat, issues
that were irrelevant to his defense because Purdin was in his own home at the time. He

-2-

also contends that the improper instruction permitted the State to argue in closing that use of the firearm was not Purdin's only means of "escape," which in turn resulted in a reasonable probability of an improper and unlawful conviction. There is no dispute that this claim was fully exhausted in the state courts, the Ohio Court of Appeals addressed the merits in Purdin's direct appeal.

## ANALYSIS

Standard of Review

A federal court may not grant habeas corpus relief to a state prisoner unless it concludes that the state court's adjudication on the merits of the prisoner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). "A state court renders an adjudication 'contrary to' clearly established federal law when it 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law' or 'decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" Carter v. Mitchell, 443 F.3d 517, 524 (6th Cir. 2007), citing Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court unreasonably applies clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

In order to find that the state court's application of federal law is objectively unreasonable, it must be more than simply incorrect. Section 2254 "... preserves

authority to issue the writ in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further." Harrington v. Richter, 562 U.S. 86, 102 (2011).

Ineffective assistance of counsel claims are governed by the standards articulated in Strickland v. Washington, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687. To demonstrate prejudice to his defense, Purdin must show a reasonable probability that the result of his trial would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

As the Magistrate Judge observed, the review of habeas claims alleging ineffective assistance of counsel is conducted under a "doubly deferential" standard. Woods v. Daniel, ___ U.S. ___, 135 S.Ct. 1372, 1376 (2015). Section 2254 and Strickland incorporate a highly deferential standard in considering a state court's decision. The Supreme Court has cautioned that "[f]ederal habeas courts must guard against the danger of equating unreasonableness under Strickland with

unreasonableness under Section 2254(d). When Section 2254(d) applies, the question

is not whether counsel's actions were reasonable. The question is whether there is any

reasonable argument that counsel satisfied Strickland's deferential standard."

Harrington v. Richter, 562 U.S. at 105.

State Court's Decision

The Ohio court of appeals addressed the merits of Purdin's ineffective assistance

claim at some length, and overruled his claim of error regarding the jury instructions on

self defense. The court held:

> In his fourth assignment of error, Purdin argues that he suffered from
> ineffective assistance of counsel because his trial counsel submitted
> erroneous jury instructions on the law of self-defense to the trial court.
> (The trial court gave the requested instructions to the jury.) Purdin argues
> that the reference to "escape" in the instructions was erroneous because it
> inappropriately implied that Purdin had a duty to retreat.
>
> ...
>
> To secure reversal for the ineffective assistance of counsel, one must
> show two things: (1) "that counsel's performance was deficient * * *[,]"
> which "requires showing that counsel made errors so serious that counsel
> was not functioning as the 'counsel' guaranteed the defendant by the Sixth
> Amendment[;]" and (2) "that the deficient performance prejudiced the
> defense * * *[,]" which "requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose result is
> reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) ... . "Failure
> to satisfy either prong is fatal as the accused's burden requires proof of
> both elements." *State v. Hall*, 4th Dist. No. 07CA837, 2007 Ohio 6091,
> ¶ 11. "Deficient performance means performance falling below an
> objective standard of reasonable representation." *State v. Hutton*, 100
> Ohio St.3d 176, 2003 Ohio 5607, 797 N.E.2d 948, ¶ 44. "To show that a
> defendant has been prejudiced by counsel's deficient performance, the
> defendant must prove that there exists a reasonable probability that, were
> it not for counsel's errors, the result of the trial would have been different."
> *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph
> three of the syllabus; accord *Strickland* at 694.
>
> Initially, we will consider whether Purdin's trial counsel's performance was

deficient by reviewing the trial court's self-defense jury instructions. "When we review a trial court's jury instructions, we must consider the jury instructions as a whole, rather than viewing an instruction in isolation, and then determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *State v. Ward*, 168 Ohio App.3d 701, 2006 Ohio 4847, 861 N.E.2d 823, ¶ 29 (4th Dist.). Generally, reversal is not warranted "due to error in the jury instructions unless the error is so prejudicial that it may induce an erroneous verdict." *Id.*

Here, the trial court instructed the jury on self-defense as follows:

> The defendant claims to have acted in self-defense.
>
> To establish the claim of self-defense, Rocky Purdin must prove by the greater weight of the evidence that:
>
> > He was not at fault in creating the situation giving rise to the death of William Stunich; and
> >
> > He had reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent danger of death or great bodily harm, and that his only reasonable grounds of escape from such danger was by the use of deadly force; and he had not violated any duty to retreat to avoid the danger.
>
> Now, a person who lawfully is in his residence has no duty to retreat before using force in self-defense against a cohabitant with an equal right to be in the home, even if he could have done so with complete safety. A cohabitant is entitled to use such means as are necessary to repel an assailant, even to the use of deadly force, provided he was not at fault in creating the situation, and provided he had reasonable grounds to believe and an honest belief, even if mistaken, that the use of deadly force was necessary to repel his assailant. ...

Purdin argues that the use of the word "escape" in the trial court's instructions misled the jury because it improperly implied Purdin had a duty to retreat when, in fact, he had no such duty. We disagree.

Initially, we note that the jury instructions were an accurate statement of the law. The instructions stated that, if Purdin was in his home, he had no

duty to retreat provided (1) that he was not at fault in creating the violent situation and (2) that he had reasonable grounds to believe and an honest belief, even if mistaken, that the use of deadly force was necessary to repel his assailant. See *State v. Powell*, 176 Ohio App.3d 28, 2008 Ohio 1316, 889 N.E.2d 1047, ¶16-22 (2d Dist.) (holding that similar instructions were an accurate statement of the law). When viewing the instructions as a whole, we cannot conclude that the use of the word "escape" in the second element of the self-defense instruction would have erroneously caused the jury to impose a duty to retreat on Purdin.

Furthermore, the instructions in this case are distinguishable from cases where the jury may have been misled into thinking that a defendant had a duty to retreat. In those cases, the error occurred because the trial court's instructions omitted any reference to the duty of retreat and the effect of finding that the defendant was in his or her home when the incident occurred. ... Here, by contrast, the instructions clearly provided the circumstances under which Purdin would not have had a duty to retreat.

Thus, Purdin's trial counsel did not submit erroneous self-defense instructions to the trial court. As a result, Purdin cannot show that his trial counsel's performance was deficient, and Purdin cannot prevail on his ineffective assistance of counsel claim.

State v. Purdin, 2013 Ohio 22, **14-19, 2013 Ohio App. LEXIS 14 (4th App. Dist.,

January 4, 2013).

In his direct appeal, Purdin also raised claims of prosecutorial misconduct. One

incident relevant to Purdin's ineffective assistance claim involved the prosecutor's

closing argument. The court of appeals overruled this claim and held:

Purdin argues that the state's claim, during closing argument, that Purdin "did not have to use the gun" because "[i]t was not his only means of escape[,]" improperly implied that Purdin had a duty to retreat. ... Purdin objected to the statement. After a bench conference regarding Purdin's objection, the state made it clear to the jury that Purdin had no duty to retreat if the jury concluded that Purdin was in his home at the time of the incident. As a result, the state's comment did not mislead the jury into believing Purdin had a duty to retreat while asserting a self-defense claim in his own residence. Therefore, Purdin cannot show that the statement amounted to prosecutorial misconduct."

State v. Purdin, 2013 Ohio 22 at **23-24.

-7-

Purdin's habeas claim is premised on the jury instruction on the second element of self defense, that he reasonably believed "...that he was in imminent danger of death or great bodily harm, and that his only reasonable grounds of escape from such danger was by the use of deadly force; and he had not violated any duty to retreat to avoid the danger." He argues this language could have led the jury to conclude that he did have a duty to retreat if he could "escape" the situation. The Magistrate Judge found that, on a first reading of the instruction, it could be confusing because that sentence did not cross-reference the third element, that there is no duty of retreat from one's own home. However, she concluded that the second element, a defendant's reasonable belief, requires an inquiry into the defendant's state of mind at the time: did he have a reasonable, bona fide belief that he was in imminent danger? Because this is a subjective evaluation of Purdin's state of mind at the time, the Magistrate Judge found that the jurors were not instructed to consider whether Purdin's "only reasonable grounds of escape" was by shooting Stunich, but to consider that element in determining the existence of his reasonable belief. She cited several cases involving cohabitants of a home where courts have found similar instructions on the second element of the defense to properly reflect Ohio law. See State v. Thomas, 673 N.E. 2d 1342-43; State v. Powell, 889 N.E. 2d 1047, 1051-52 (Ohio Ct. App. 2008), and other cases cited in the Report (Doc. 14 at 14, PAGEID 1455).

The Magistrate Judge then considered Purdin's contention that his lawyer should have requested a "less confusing instruction" that did not use the word "escape" in defining the second element. In considering an ineffective assistance claim, the issue is not what counsel might have done or said that would be better or preferable. It is

-8-

whether the act or statement fell within the broad scope of reasonable assistance of counsel. The instructions that Purdin's lawyer requested accurately stated Ohio law, and the Ohio court of appeals found it was not unreasonable to submit instructions that complied with state law.

Purdin also argues that the prosecutor's closing argument, telling the jury that Purdin "didn't have to use the gun" because it was "not his only means of escape," heightens the error in the jury instructions as they pertained to Purdin's trial. As noted by the Magistrate Judge, in his closing argument the prosecutor addressed the second element of self defense, Purdin's reasonable belief that he was in imminent danger. He reviewed Purdin's testimony about the timeline of events the night of the shooting. The prosecutor labeled Purdin's claim that he feared for his life "not credible" because Purdin left Stunich and went down the hall to another room and was behind the door to that room. The prosecutor then stated: "He did not have to use the gun. It was not his only means of escape from ...". (Doc. 13-1 at PAGEID 1328) Purdin's counsel immediately interrupted and objected. The court held a sidebar conference, and defense counsel argued that escape was not an issue because Purdin was in his own home, and the prosecutor's comments were prejudicial. After a lengthy back-and-forth, the prosecutor offered to "... put it point blank that ... it's his house, and he does not have to retreat in the house." The prosecutor admitted that he used the words "escape" and "retreat" interchangeably. The trial court reserved ruling on the objection, and the prosecutor then continued, telling the jury that "... I was talking to you about the second element ... but there is a third element that would negate, or make my argument invalid, with respect to any duty to escape or retreat. ... And you'll get a jury instruction that says

... the defendant, Rocky Purdin would not have violated any ... duty to retreat to avoid danger. A person who lawfully is in a residence has no duty to retreat before using force in self-defense against a co-habitant, with an equal right to be in the home, even if he could have done so with complete safety." (Doc. 13-1, PAGEID 1337-1338) Defense counsel offered no additional objection, and the closing argument continued.

The Magistrate Judge found that this exchange reflected effective advocacy for Purdin's self-defense claim. The prosecutor himself reminded the jury that Purdin had no duty to retreat even if he could have safely done so. His statement, combined with defense counsel's own arguments that stressed that point, cleared up any possible confusion on this issue. The Magistrate Judge ultimately concluded that Purdin had not shown that the state court's decision on his claim was contrary to nor an unreasonable application of Strickland. She therefore recommended that Purdin's petition be denied. She also recommended that the Court grant a certificate of appealability, finding that the issue deserves further consideration.

Purdin objects, arguing that the Magistrate Judge failed to address the primary argument presented in his traverse brief. Purdin argued in his traverse that "there is absolutely no way of knowing which instruction the jurors placed greater reliance on: the incorrect guidance to consider whether Mr. Purdin had a means of escape other than deadly force, or the correct instruction that he had no duty to retreat. If the jurors [agreed] with the argument made by the prosecution in rebuttal closing, [and] wrongly concluded that Mr. Purdin could have 'escaped' the final confrontation with Mr. Stunich, but instead fired his rifle, then Mr. Purdin's self-defense claim was rejected on an improper basis." (Doc. 16 at 3, quoting from traverse brief, Doc. 11 at PAGEID 391.) He

notes that Strickland's prejudice prong focuses on whether counsel's errors "renders the result of the trial unreliable or the proceeding fundamentally unfair" (Doc. 16 at 3).  Due to the incorrect and confusing instruction, he argues that the verdict is unreliable because one cannot be confident that the jury did not lose its way.

The Court disagrees with Purdin's initial contention that the Magistrate Judge failed to address the argument he presented in his traverse brief.  She squarely discussed it, and even conceded that "at least at first blush, the reference to 'escape' in the instruction on the second element of the defense could be confusing to a juror ...". (Doc. 14 at 13)  She went on to discuss the differences between the second and third elements of self defense, and she cited cases rejecting claims of instructional error based upon essentially identical instructions to those given at Purdin's trial.  Those cases include State v. Thomas, 77 Ohio St. 3d 323 (1997), in which the defendant asserted self-defense in her trial for murdering her live-in boyfriend.  She was convicted and on appeal, argued that the trial court erred in refusing to instruct the jury that she had no duty to retreat because she was assaulted in her own home.

The Ohio Supreme Court vacated her conviction, noting that self defense has three elements: "(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger."  Id. at 326.  When the assault occurs in one's own home, however, there is no duty to retreat, whether or not the assailant is an intruder or a co-inhabitant.  And in addressing the second element of self-defense (and the trial court's refusal to separately instruct the jury on battered

woman syndrome), the court stated that it requires proof that defendant "... had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force." Id. at 330 (internal citation omitted). It is clear that the reference to "means of escape" as part of the second element instruction is part of the jury's consideration of a defendant's bona fide belief. It does not require the jury to conclude that a defendant "must" escape, or has a duty to escape, in the face of a reasonable belief of mortal danger in defendant's own home.

The Magistrate Judge specifically noted Purdin's contention that a "less confusing instruction" that eliminated the word "escape" might have been a better choice, given Purdin's contention that the prosecutor's closing argument comments created a serious doubt about jury confusion. But the Magistrate Judge observed that whether the instruction could have been better is not the issue when reviewing a state court's decision regarding an ineffective assistance of counsel claim. The issue is whether that decision was contrary to, or an unreasonable application of federal law.

Purdin contends that the confusing instruction rendered his trial fundamentally unfair. The Court disagrees. The jury instructions were a correct statement of Ohio law, and both the prosecutor and defense counsel stressed to the jury that Purdin had no duty to retreat from his own home. In weighing whether Purdin held a reasonable belief that he was in imminent danger, Ohio law permitted the jury to consider whether Purdin reasonably believed that use of force was the only means he had to escape that imminent danger. Purdin has not shown that the Ohio court of appeals decision rejecting his claim was contrary to, or an unreasonable application, of federal law.

**CONCLUSION**

-12-

For the foregoing reasons, the Court adopts the Magistrate Judge's Report in full. The Court overrules Purdin's objections to that Report.  Purdin's petition for a writ of habeas corpus is denied.

The Court finds that a certificate of appealability should issue with respect to the petition, because reasonable jurists could debate whether the claim Purdin raises should be resolved in a different fashion, and whether the issue he presents is adequate for further proceedings.  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

The Court certifies, pursuant to 28 U.S.C. §1915(a)(3) that an appeal of this Order would be taken in good faith, and grants Purdin leave to appeal in forma pauperis upon a showing of financial necessity.  See Kincade v. Sparkman, 117 F.3d 949, 952 (6th Cir. 1997).

SO ORDERED.

THIS CASE IS CLOSED.

DATED: November 24, 2015                          s/Sandra S. Beckwith
                                                  Sandra S. Beckwith, Senior Judge
                                                  United States District Court